O

1
2
3
4
5
6
7
8
9
10

# United States District Court
# Central District of California

11
12
13
14
15
16
17

WILD CHANG et al.,

               Plaintiffs,

     v.

FARMERS INSURANCE COMPANY, INC. et al.,

               Defendants.

Case № 2:22-cv-02548-ODW (MARx)

**ORDER GRANTING MOTION TO DISMISS [13]**

18

## I.     INTRODUCTION

19
20
21
22
23
24
25
26
27
28

On April 15, 2022, Plaintiffs Wild Chang Sr., Wild Chang Jr., and Kenneth Lo, proceeding pro se, filed this action in federal court against Defendants Farmers Insurance Company, Inc. ("Farmers Insurance"), Fire Insurance Exchange ("Fire Insurance"), Woolls Peer Dollinger & Scher ("Woolls Peer"), and Stacy Chern. (Compl., ECF No. 1.)   Plaintiffs allege that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), including by fraudulently attempting to shield Farmers Insurance from liability under an insurance policy.  (*Id.*) Defendants now move to dismiss Plaintiffs' Complaint under Federal Rule of Civil

Procedure ("Rule") 12(b)(6).  (Mot. Dismiss ("Mot." or "Motion"), ECF No. 13.)  For the following reasons, the Court **GRANTS** Defendants' Motion.[1]

## II.     BACKGROUND

In resolving a Rule 12(b)(6) motion, the Court takes Plaintiffs' well-pleaded factual allegations as true.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  In addition, the Court may consider Plaintiffs' exhibits to the Complaint.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting [a] motion to dismiss into a motion for summary judgment.").  However, the Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Farmers Insurance is a corporation engaged in providing property insurance. (Compl. ¶ 12; *id.* Ex. 13 ("Giles Declaration" or "Giles Decl.") ¶¶ 15–16.)  Fire Insurance is an inter-insurance exchange that sells insurance policies nationwide through contracted insurance agents.  (Giles Decl. ¶¶ 4–6.)  Chern is an agent authorized to sell insurance products on behalf of Fire Insurance and other Farmers Insurance companies.  (Compl. ¶ 14; *id.* Ex. 14 ("Chern Declaration" or "Chern Decl.") ¶ 3.)

On April 29, 2014, Chang Sr. and Lo purchased an insurance policy while refinancing a property in Rowland Heights, California ("Property").  (Compl. ¶¶ 26, 33, 77.)  At the time of their purchase, Chang Sr. and Lo understood the insurer for this policy to be Farmers Insurance.  (*Id.*)

On December 16, 2014, Chang Sr. entered the crawlspace underneath the Property's foundation and used a lighter and bug spray to attempt to kill spiders,

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

1  causing an accidental structural fire that damaged the Property.  (*Id.* ¶¶ 35, 38, 40; *id.*
2  Ex. 6 ("Fire Report & Arson Investigation").)  Plaintiffs filed an insurance claim for
3  damages related to the fire.  (Compl. ¶ 35.)

4       On March 17, 2015, after Plaintiffs requested a copy of their insurance policy,
5  Fire Exchange mailed Plaintiffs a copy of the policy, which was "disguised" as an
6  insurance policy from Farmers Insurance.  (*Id.* ¶¶ 35–36, 78; *id.* Ex. 5 ("Policy").)
7  The Policy named only Lo as an insured for the Property.  (Policy 51[2].)  Later that
8  year, Plaintiffs received a notice of non-renewal that informed Plaintiffs that their
9  insurance coverage for the Property would end on January 30, 2016.  (*See* Compl.
10  ¶ 42; *id.* Ex. 7 ("Notice of Non-Renewal").)

11       While awaiting a decision on their insurance claim, Chang Sr. and his son,
12  Chang Jr., lived in a detached building located on the Property and slept on air
13  mattresses.   (Compl. ¶¶ 40, 63–64; *id.* Ex. 29 ("Temporary Housing Denial").)
14  During this time, Chang Sr. suffered a stroke, which Chang Jr. witnessed, resulting in
15  emotional distress. (Compl. ¶ 64.)  Following this incident, Chang Sr. was confined to
16  a wheelchair and unable to swallow food for a period of several months.  (*Id.*)

17       In January and February of 2016, Plaintiffs' counsel communicated with Fire
18  Insurance's claim counsel regarding the status of Plaintiffs' insurance claim and the
19  ongoing investigation into the claim. (*See id.* ¶¶ 43–44; *id.* Exs. 8–9 ("Claim Counsel
20  Communications").)  On February 22, 2016, Fire Insurance's claim counsel informed
21  Plaintiffs' counsel that Fire Insurance would approve payment to repair the Property's
22  structure, but would not cover additional living expenses for Chang Sr. and Chang Jr.,
23  who were not listed as named insureds on the Policy. (Compl. ¶ 45; *see id.* Ex. 10
24  ("Claim Decision").)

25       On February 16, 2017, Chang Sr. and Lo filed a complaint in Los Angeles
26  Superior Court against Farmers Insurance, Fire Insurance, and Chern, seeking relief

27

28  [2] When citing a particular page in Plaintiffs' exhibits to the Complaint, the Court cites the pagination found in the CM/ECF header.

for "conventional breach of contract," "related bad faith," and tort causes of action.[3] (Compl. ¶ 48; Defs.' Req. Judicial Notice ISO Mot. ("RJN") Ex. 1 ("State Court Complaint" or "State Ct. Compl."), ECF No. 13-1. )  Defendants are represented by Woolls Peer in this state action.  (Compl. ¶¶ 48–60.)  On January 26, 2018, the state court dismissed, with prejudice, Farmers Insurance as a defendant.  (*Id.* ¶ 49.)  On July 19, 2021, Plaintiffs amended the State Court Complaint to, as relevant here, allege fraud as a cause of action and add Woolls Peer as a defendant. (RJN Ex. 2 ("Third Am. State Court Compl.").)  The defendants demurred, and the state court sustained the demurrer in its entirety, allowing Plaintiffs leave to amend only the sixth cause of action for emotional distress.  (*See* RJN Ex. 3 ("Notice of Ruling on Demurrer").)

Plaintiffs then brought this civil RICO action in federal court under the theory that Defendants conspired to fraudulently convert Plaintiffs' policy with Farmers Insurance into a policy with Fire Insurance and to shield Farmers Insurance from liability under the Policy.  (Compl. ¶¶ 69–98.)  Plaintiffs' RICO action is organized into three counts alleging RICO violations.  (*Id.*)  Defendants now move to dismiss on the basis that Plaintiffs' RICO claim is (1) time-barred to the extent it is based on unreimbursed costs and damages from the fire; and (2) premature to the extent it is based on damages in the form of attorneys' fees and costs incurred in the underlying state court action.  (Mot. 7–9.)

### III.    LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, a complaint need only satisfy "the minimal notice

---

[3] The Court grants Defendants' Request for Judicial Notice and takes judicial notice of Defendants' Exhibits 1 through 5 as related filings in a state court case.  *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of related court filings).

1    pleading requirements of Rule 8(a)(2)"—"a short and plain statement of the claim."

2    *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003) (quoting Fed. R. Civ. P. 8(a)(2)).

3    However, the "[f]actual allegations must be enough to raise a right to relief above the

4    speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the

5    complaint must "contain sufficient factual matter, accepted as true, to state a claim to

6    relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

7    (internal quotation marks omitted).

8         The determination of whether a complaint satisfies the plausibility standard is a

9    "context-specific task that requires the reviewing court to draw on its judicial

10   experience and common sense." *Id.* at 679.  In making that determination, a court is

11   generally limited to the pleadings and must construe "[a]ll factual allegations set forth

12   in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee*,

13   250 F.3d at 679 (9th Cir. 2001) (internal quotation marks omitted) (quoting *Epstein v.*

14   *Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)).  Although a court must view

15   these allegations in the light most favorable to the nonmoving party, it is not required

16   to blindly accept "allegations that are merely conclusory, unwarranted deductions of

17   fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988.

18        Where a district court grants a motion to dismiss, it should provide leave to

19   amend unless it is clear the complaint could not be saved by any amendment.  *See*

20   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

21   **IV.   DISCUSSION**

22        Defendants seek dismissal of Plaintiffs' RICO claim or, alternatively, a stay of

23   this action until the state court action is resolved.  (Mot. 4.)  Defendants argue that

24   Plaintiffs' claim is time-barred if the underlying injury relates to the handling of

25   Plaintiffs' insurance claims.[4]  (*Id.* 7–8.)  Defendants also argue that Plaintiffs' claim is

26

27

28

---

[4] Regardless of whether Plaintiffs' alleged injuries are sufficient to sustain a civil RICO claim, the Court considers the injuries as alleged to determine if Plaintiffs' claim falls outside the statute of limitations.

5

1    premature to the extent it amounts to a malicious prosecution claim based on Woolls

2    Peer's conduct in the state court proceedings.[5]  (*Id.* 8–9.)

3         "To state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an

4    enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to

5    plaintiffs' business or property."  *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001)

6    (internal quotation marks omitted) (citing 18 U.S.C. § 1964(c)).  "The statute of

7    limitations for civil RICO actions is four years."  *Pincay v. Andrews*, 238 F.3d 1106,

8    1108 (9th Cir. 2001) (citing *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*,

9    483 U.S. 143, 156 (1987)).  Courts in the Ninth Circuit "have continuously followed

10   the 'injury discovery' statute of limitations rule for civil RICO claims."  *Id.* (citing

11   *Grimmett v. Brown*, 75 F.3d 506, 511 (9th Cir. 1996)).  The injury discovery rule

12   provides that "the civil RICO limitations period begins to run when a plaintiff knows

13   or should know of the injury that underlies [the] cause of action."  *Grimmett*, 75 F.3d

14   at 510.  However, "[t]he plaintiff need not discover that the injury is part of a 'pattern

15   of racketeering' for the period to begin to run."  *Id.*  Moreover, a "plaintiff is deemed

16   to have had constructive knowledge if it had enough information to warrant an

17   investigation which, if reasonably diligent, would have led to discovery of the fraud."

18   *Pincay*, 238 F.3d at 1110 (quoting *Beneficial Standard Life Ins. Co. v. Madariaga*, 851

19   F.2d 271, 275 (9th Cir. 1988)).

20        Here, Plaintiffs' RICO claim is premised on the theory that Defendants worked

21   in concert to shield Farmers Insurance from liability, including by fraudulently

22   converting the insurance policy that Plaintiffs allege they purchased from Farmers

23   Insurance into a policy with Fire Insurance and by fraudulently litigating the state

24   court case.  (Compl. ¶¶ 69–98.)  In alleging that Defendants' conduct constitutes a

25

26   [5] The Court does not reach this argument because it finds that Plaintiffs' claim, as alleged, is
     time-barred under the statute of limitations for a civil RICO claim.  To the extent Plaintiffs seek to
27   recover for attorneys' fees and costs incurred during the state court litigation, Plaintiffs' allegations
     make clear that they knew of those injuries in January 2018.  (*See* Compl. ¶ 79 (alleging Defendants
28   fraudulently litigated the state court case in January 2018).)

pattern of racketeering activity, Plaintiffs identify three specific acts of racketeering. (*Id.* ¶¶ 76–79.)   First, Plaintiffs allege that, on April 29, 2014, their purchase of insurance coverage was fraudulently executed as a policy with Fire Insurance, rather than Farmers Insurance.   (*Id.* ¶ 77.)   Second, Plaintiffs allege that the Policy, which was "disguised" as an insurance policy from Farmers Insurance, was fraudulently provided to Plaintiffs on March 17, 2015.   (*Id.* ¶¶ 36, 78.)   Third, Plaintiffs allege that Defendants fraudulently litigated the state court case in January 2018 to dismiss Farmers Insurance as a defendant.   (*Id.* ¶¶ 49, 79.)

Assuming for the sake of argument that these three acts are sufficient to sustain a RICO claim, they also indicate that Plaintiffs were on notice of the facts underlying the alleged fraud more than four years before filing this case.   As to the second act of alleged racketeering, on March 17, 2015, Plaintiffs received a copy of the Policy, which identified both "Fire Insurance Exchange" and "Farmers Insurance Group" in the header on the Policy's first page.   (Policy 51.)   In addition, the Policy included a notice "sent on behalf of the Farmers Insurance Group of Companies, whose members include, but are not limited to: . . . Fire Insurance Exchange [and] Farmers Insurance Company, Inc."   (*Id.* at 86.)   Thus, the Policy was not disguised as an insurance policy from Farmers Insurance, but rather, it indicated on its face that it was a product of Fire Insurance and Farmers Insurance.   (*See generally* Policy.)

Plaintiffs' subsequent communications with Farmers Insurance and Fire Insurance concerning Plaintiffs' insurance claim provided further notice of the facts underlying the alleged fraud.   For example, Plaintiffs received the Notice of Non-Renewal dated November 19, 2015.   (Notice of Non-Renewal.)   Although the notice was signed by Farmers Insurance, it expressly stated that the Policy is "Underwritten By Fire Insurance Exchange."   (*Id.*)   Further, in January and February of 2016, Plaintiffs' counsel communicated with Fire Insurance's claim counsel regarding Plaintiffs' insurance claim.   (*See* Claim Counsel Communications.)   Thus, after receiving the Policy and communicating with Fire Insurance's agents and

representatives, Plaintiffs had sufficient information to warrant an investigation into the relationship between Fire Insurance and Farmers Insurance, which would have led Plaintiffs to discover the fraud they now allege.  *See Pincay*, 238 F.3d at 1110. Plaintiffs therefore had constructive notice of the fraud in 2015 or 2016, yet waited six years to file their RICO action in April 2022.  (*See* Compl.)

Moreover, Plaintiffs' allegations and information subject to judicial notice make clear that Plaintiffs learned of the injuries underlying their RICO action more than four years before filing the Complaint.  Plaintiffs allege that they suffered damages in the form of the denial of benefits under the Policy and related physical and emotional injuries.  (*See* Compl. ¶¶ 63–67.)  However, on February 16, 2017, Plaintiffs filed the State Court Complaint against Farmers Insurance, Fire Insurance, and Chern, seeking to recover for damages suffered as a result of Defendants' handling of Plaintiffs' insurance claim.  (*See generally* State Ct. Compl.)  Thus, it is clear that Plaintiffs knew of these injuries by February 16, 2017.  (*Id.*)  Regardless of whether Plaintiffs understood any injury to be part of a pattern of racketeering, the statute of limitations began to run with Plaintiffs' notice of the injury itself.  *Grimmett*, 75 F.3d at 510.

To the extent that Plaintiffs seek damages in the form of attorneys' fees and costs in litigating the state court action, (*see* Compl. ¶ 68), a RICO claim based on those injuries would also be time-barred.  In the third act of racketeering, Plaintiffs allege that Defendants fraudulently litigated the state court case in January 2018 to dismiss Farmers Insurance as a defendant.  (*Id.* ¶ 79.)  Thus, it is clear that Plaintiffs knew of their alleged injuries in January 2018, but they did not file the Complaint until more than four years later.  (*See* Compl.)  Accordingly, Plaintiffs' RICO claim is time-barred.

Plaintiffs' arguments to the contrary fail.  Plaintiffs allege that they were not aware of Defendants' RICO violations until "[r]ecently," after they came across news headlines and "realized" that the RICO violations in those cases were "similar" to the

activities involved here.  (Compl. ¶¶ 3, 32.)  However, as discussed above, Plaintiffs "need not discover that the injury is part of a 'pattern of racketeering' for the period to begin to run."  *Grimmett*, 75 F.3d at 510 (quoting *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1464–65 (7th Cir. 1992)).  Instead, the period "begins to run when a plaintiff knows or should know of the injury that underlies [the] cause of action."  *See id.* 510–11.  For the reasons discussed above, Plaintiffs knew of their injury more than four years before filing the Complaint, regardless of when Plaintiffs may have discovered a broader pattern of racketeering.

Plaintiffs also argue that Defendants' RICO violations are ongoing and, thus, subject to the separate accrual rule.[6]  (Opp'n 13, ECF No. 20.)  "The separate accrual rule 'provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before.'"  *Hunter v. Union Corp.*, 94 F.3d 651 (9th Cir. 1996).  For the separate accrual rule to apply, a plaintiff must identify a "new overt act[]" within the limitations period, which must (1) "be a new and independent act that is not merely a reaffirmation of a previous act;" and (2) "inflict new and accumulating injury on the plaintiff."  *Grimmett* 75 F.3d at 512–13 (internal emphasis omitted).  Here, however, Plaintiffs fail to identify which, if any, of Defendants' acts constitutes a new overt act inflicting a new injury within the limitations period.  (*See generally* Opp'n.; *see also* Compl.)

Accordingly, the Court finds that Plaintiffs failed to timely bring their RICO claim within the four-year limitations period, and the claim is thus time-barred. However, the Court provides Plaintiffs leave to amend to allege additional facts in support of the application of the separate accrual doctrine.

///

///

///

---

[6] Defendants did not file a reply or otherwise respond to Plaintiffs' cursory invocation of the separate accrual rule.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss, **with leave to amend** as described above.  (ECF No. 13.)  If Plaintiffs choose to amend, their First Amended Complaint is due no later than **twenty-one (21) days** from the date of this Order, in which case Defendants shall answer or otherwise respond within **fourteen (14) days** of the filing.  If Plaintiffs do not amend, then the dismissal of Plaintiffs' claim shall be deemed a dismissal with prejudice as of the lapse of Plaintiffs' deadline to amend.

**IT IS SO ORDERED.**

December 29, 2022

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**